### MUNDY, ADMINISTRATOR OF SARAH TERRILL v. WILLIAM M. ROSS.

A promise to pay the debt of another, to be good and effectual within the statute of frauds, must be made not only upon a sufficient consideration, but in writing.

This was a suit brought originally in the Court of Common Pleas of the County of Middlesex, and the judgment therein

rendered, removed into this court by writ of error. The opinion of the court delivered by the CHIEF JUSTICE, contains a statement of the points in controversy.

*E. Wood*, for plaintiff in error.

*J. S. Nevius, contra.*

HORNBLOWER, C. J. In the year 1819, Sarah Terrill the intestate, who was the widow of —— Terrill deceased, together with William M. Ross, and his wife, and others, who were heirs at law of said —— Terrill, filed a bill in Chancery in this State, against his executor, for an account, &c.

This action was commenced in the year 1834, by William M. Ross, against Mundy, the administrator of the said Sarah Terrill, to recover for the time, care and attention bestowed, and the fees, costs, and expenses paid by him the said William M. Ross, in and about the conducting and prosecuting the said suit in Chancery.

In support of his claim, the plaintiff called a witness, (his daughter) by whom he offered to prove, that in the year 1825, (and of course after the Chancery suit had been commenced, and while it was pending,) in a conversation between the plaintiff and the intestate respecting that suit, the intestate, *in consideration*, that the plaintiff would *continue* to prosecute the said suit in behalf of himself and the other parties complainants, promised that she would pay and satisfy to the plaintiff for all his costs, trouble, and expenses, *incurred* by him in the prosecution of the said suit in Chancery, and for all the costs and charges which he might pay for the other parties complainants therein.

To this evidence the plaintiff in error objected, but the court overruled the objection, and admitted the evidence: and this is assigned for error.

The defendant in error was himself a party complainant in the suit in Chancery, and though the complainants as between them, and their adversaries in that suit, may have been jointly and severally liable for costs, yet as among themselves in the absence of any agreement to the contrary, they were bound only to contribute their respective portions of the costs and

expenses attending the prosecution of the suit. Ross, the plaintiff in error, and the other complainants in equity, must, in the absence of all negative proof on the subject, be presumed to have joined in the suit in Chancery voluntarily, and for their own individual benefit; and were therefore severally and *personally* liable to contribute their just proportions of trouble and expense in prosecuting the same. Up then, at least, to the year 1825, the time of the conversation given in evidence, Ross's just proportion of the costs and expenses then incurred, was, as between him and the intestate, and his other co-complainants, *his own proper debt.* Any promise therefore by the intestate, or by any other person, to pay *that debt*, in order to have been good and effectual within the statute of frauds, should have been made, not only upon a sufficient consideration, but *in writing.* So far then, as the parol evidence admitted, went to establish an undertaking by the intestate to pay Ross, for all *his* trouble and expenses already incurred, it was illegal; for though the consideration, namely—that he would *continue* to prosecute &c. may have been sufficient, the agreement lacked one essential ingredient required by the statute, to wit; a note or memorandum thereof in writing, &c. *Raun and al. executors* v. *Hughes*, 7 *T. R.* 350, *in n.*

It is true, the plaintiff below, afterwards introduced another witness, who testified that some time in the year 1822, in a conversation then had, between the plaintiff and the intestate, respecting the said Chancery suit, she admitted "that her estate was liable for all the costs and expenses to which the plaintiff had been subjected, and which he had paid; and that she or her estate, would be liable for all the costs and expenses to which the plaintiff might be subjected, and might thereafter pay, in the prosecution and maintainance of the said suit in behalf of himself and the other complainants." This, so far as it went, was undoubtedly legal and competent evidence, from which the jury might have inferred an *original* undertaking and agreement by the intestate, before the commencement of the suit in Chancery to pay *all* the costs and expenses incident thereto. It is obvious to remark, however, that this latter testimony does not strengthen or confirm the former; it is rather in derogation

of it; for, by the evidence of the plaintiff's daughter, there was in the year 1825, and then, for the first time, a distinct and original agreement, that in consideration of the future services of the plaintiff, she would pay, not only the costs and expenses to be incurred, but those already accrued. Whereas, the testimony of the last witness, goes to show a pre-existing agreement by the intestate, to pay all costs, &c.; and yet no reference whatever was made to any such existing agreement, in the conversation, sworn to by the plaintiff's daughter. If however, the testimony of both witnesses, was legal and proper, it was for the jury to reconcile the discrepancy. The question for this court is, whether parol evidence was admissible to prove the agreement set up in 1825? And so far as that agreement extended to the payment of the plaintiff's just proportion of the antecedent costs and expenses, I am clearly of opinion, it was not. It will not do to say, that the jury might lawfully have found such a verdict as they did, upon the evidence of the second witness alone. The answer to that is, that for all we can tell, they entirely discredited the second witness, and founded their verdict exclusively upon the testimony of the first. If they did so, they rendered a verdict upon unlawful evidence. The court below erred in admitting that evidence to the extent they did; and the judgment must therefore be reversed.

FORD, J. and RYERSON, J. concurred.

*Judgment reversed.*